## CONN et al. v. TEXAS & N. O. RY. CO. et al.
### (No. 1190—5192.)

Commission of Appeals of Texas, Section A.
March 20, 1929.

John B. Warren, of Houston, for plaintiffs in error.

Andrews, Streetman, Logue & Mobley, and Garrison & Watson, all of Houston, for defendants in error.

NICKELS, J. The case is generally stated in the opinion of the Court of Civil Appeals, 4 S.W.(2d) 193. Particular matters (some of which are without notice in that opinion) will be stated herein below.

1. The shipment in question moved under through bill of lading. Each of the four (connecting) carriers became a party to the bill. Article 905, R. S. 1925. The bill required collection of freight charges at destination.

Each carrier is a corporation, and must have gotten whatever knowledge and notice it has through agents. Each was the agent of each and all of the others. Article 905. Since each is a corporation, and since there is intersese (corporate) representation, information acquired by the agent of the terminal carrier, while acting within the scope of his authority, became, immediately upon acquisition by him, the knowledge of each and all of the carriers.

The goods were tendered for shipment and the bill of lading was signed December 11, 1924. On December 15, 1924, Conn surrendered the bill of lading to the agent (immediately, of the terminal carrier) at destination, and paid the freight charges. Tender of the bill and payment was by the agent accepted. That act plainly lay within apparent scope, and, for aught that appears, within actual scope, of the agent's authority.

In immediate connection with collection of the freight charges, that agent acquired from Conn knowledge of the "special circumstances"; that is, the necessitous condition of the cattle for whose feeding the goods were designed. By imputation of law, that knowledge became (then) the knowledge of the carriers. Thereafter, 14 days preceded delivery.

2. In our opinion, there is liability if, subsequent to moment of transactions on December 15th mentioned, there was negligence which proximately caused the damages, called "special damages," sued for. Bourland v. Choctaw, O. & G. R. Co., 99 Tex. 407, 90 S. W. 483, 3 L. R. A. (N. S.) 1111, 122 Am. St. Rep. 647; Western Union Tel. Co. v. Hice (Tex. Com. App.) 288 S. W. 175.

Since delivery, as is manifest, was an important subject of the contract, or of the general duty of a carrier, involved in the Bourland Case, and since, as is also manifest, the court declared liability despite entire lack of notice, of "special circumstances," save that given long after the contract was made, the principle of that case cannot be reconciled with a view that original notice is indispensable. Its dispensability is there expressly declared, and application of the rule in Hadley v. Baxendale to facts or relationships which do not include ground for "the reasons underlying" the rule is therein repudiated.

The carriers charged and received all of the money which they might have charged and received if notice of special circumstances had been given at time of receipt of the goods for shipment. And they were not at liberty to decline receipt, transportation, and delivery of the goods either in presence or in absence · of that notice. Their duty at all stages was use of due care to forward and deliver within a reasonable time; that duty was not lessened by absence of such notice, nor would it have been increased by presence of such notice. In such a case, notice, or lack of it, does not go primarily to the matter of duty vel non.

Primarily, it relates to foreseeability and thus to proximate cause. The carrier is immune to liability for "special damages" resultant of negligence transpiring before notice of the "special circumstances" because, unless it were more than the ":ordinarily prudent man," it could not then (i. e., at time of negligent act or omission) foresee the effect, and not because it performed its duty. If the carrier be held for "special damages" which are the proximate result of negligence committed after ,receipt of notice of "special circumstances," that holding includes or rests upon presupposition of immunity, in respect to "special damages," for prior negligence.

In that situation the carrier is fully protected on the score of precautions to avert the injuries, for it could not be held negligent after notice unless it failed after notice to use due care, and in determining that question account would be taken of means available (and procurable) to avert threatened loss.

The "reasons underlying" the rule in Hadley v. Baxendale do not, in our opinion, have ground in the facts and relations making such a case as that before us, and, with that ground lacking, exclusive application of the rule "fails," in the words of Judge Williams in the Bourland Case, "to meet the demands of substantial justice."

Higginbotham v. Kyle (Tex. Com. App.) 294 S. W. 531, cited by the Court of Civil Appeals, did not involve facts or relationships comparable to those set up here; the nature of that case is not to be ignored in reading what Judge Harvey had to say in the opinion.

3. The argument is made that the information of "special circumstances" must be given to an agent having "jurisdiction" of the matter of delivery, even if notice given subsequent to commencement of the relation be sufficient. This, it is said, is the predicate of Bourland v. Choctaw, O. & G. R. Co., and of Western Union Tel. Co. v. Hice. It so happened that the notice given in the transactions making up the subject-matter of those cases was in fact given to agents having the immediate duty of delivery; but negligence subsequent to notice of "special circumstances" and its proximity of causation of the "special damages" are the bases of the decisions made. The argument is nonsequential, in that it omits account of reasoning underlying imputation of knowledge. If the agent while duly representing the principal in a particular matter, in this case, collection of freight, etc., gets information, that information immediately becomes the knowledge of his principal, and the principal's conduct from that moment becomes affected by the knowledge. The principal or principals here at that moment and afterward until December 29, 1924, had immediate control of the property whose delivery was due.

4. There is in the record evidence presenting "special damages" proximately resultant of failure to deliver after December 15 and before December 29, 1924. Hence, the remaining question is this: Does the evidence, as controlled by averments, show negligence in that failure?

There are in the petition averments: (a) That "five days" is a "reasonable time" for forwarding and transporting to Camptown and delivery there, and that "two days" is a "reasonable time" for movement beyond Beaumont and final delivery, as compared with actual consumption of eighteen days in the entire movement and consumption of fifteen days thereof at Beaumont and beyond. (b) That the excess of time used, caused in part by mistake in billing so ·that the "car" first moved December 17th westward, instead of eastward, toward point of destination, out of Beaumont, caused the damages sued for.

There is proof: (a) Of "about 300 miles" as the distance between Dallas, point of origin, and Beaumont and of about 40 miles as the distance between ·Beaumont and Camptown, point of destination. (b) That the route between Beaumont and Camptown includes the lines of the terminal carrier and of two intermediate carriers. (c) Of consumption of eighteen days in this entire movement as com-

pared with "five days" used in other: like movements. (d) Of injuries reasonably attributable to the excess of time used by the carriers. This proof is unrebutted in any way or to any extent, and it raises inference of negligence. St. Louis, etc., R. Co. v. Gunter, 44 Tex. Civ. App. 480, 99 S. W. 152; Chicago, R. I. & P. R. Co. v. Gillett (Tex. Civ. App.) 99 S. W. 712; Panhandle & S. F. R. Co. v. Thompson (Tex. Civ. App.) 250 S. W. 751; Raphal v. Pickford, 6 Scott N. R. 478; Michigan, etc., R. Co. v. Day, 20 Ill. 375, 71 Am. Dec. 278.

But for the specific averments putting the car in Beaumont on December 14th with its erroneous movement out of Beaumont on December 17th, a presumption would arise that all of the excess time was used by the terminal carrier. Texas & P. Ry. Co. v. Adams, 78 Tex. 372, 14 S. W. 666, 22 Am. St. Rep. 56; Burd v. San Antonio Southern R. Co. (Tex. Com. App.) 261 S. W. 1021; Chicago & N. W. R. Co. v. C. C. Whitnack Produce Co., 258 U. S. 369, 42 S. Ct. 328, 66 L. Ed. 665; Central of Georgia R. Co. v. Goodwater Mfg. Co., 14 Ala. App. 258, 69 So. 343; Harper Furniture Co. v. Southern Express Co., 144 N. C. 639, 57 S. E. 458, 12 Ann. Cas. 924. The presumption would obtain as against the terminal carrier also except for the specific averments that the "car" stayed at Beaumont from some time on December 14th until some time on December 17th, in immediate possession of the initial or an intermediate carrier, and on the latter date, while in possession of an intermediate carrier, moved westward instead of eastward, toward point of destination. In view of the specific averments and the proof mentioned, the presumption so operates as to attribute the whole of the excess time to the carriers which had possession of the "car" after arrival at Beaumont; that is to say, it must be presumed that the "car" was forwarded and transported to Beaumont within a reasonable time, alleged and proved, prima facie, to have been something less than five days. And, on the averments and proof and the presumption mentioned, the "car" was at Beaumont when notice of "special circumstances" was given on December 15th.

Conn, as noted already, on December 15th, surrendered the bill of lading and paid the freight charges to the agent of the terminal carrier at Camptown. In that connection, and as a part of the transaction, Conn notified that agent of the "special circumstances," and requested that the "car be traced at once" and the agent "promised to trace it." At the same time the agent by telephone transmitted the information, along with data identifying the "car," to an agent of some of the carriers at Mauriceville, a junction intervening Beaumont and Camptown, and requested that agent also to "trace the car."

It is manifest that, if the car had been "traced" it could have been located at Beaumont and its "misrouting," thus could have been prevented with the result, inferably, that the "car" would have moved in proper direction out of Beaumont and subsequent delay avoided.

Or, if the "car" had been properly "traced," its mismovement, if then already begun, out of Beaumont obviously might have been corrected so as to preclude some portion of the delay after December 15th.

Those probabilities, along with proof of consumption of fourteen days in movement from Beaumont and delivery at Camptown, about 40 miles from Beaumont, raise, in our opinion, inference of negligence either in failure of proper "tracing" or in failure of due care after discoveries made in proper "tracing." Chicago, R. I. & P. R. Co. v. Gillett, supra: Missouri, K. & T. R. Co. v. Stark Grain Co., 103 Tex. 542, 544, 131 S. W. 410.

5. There are serious questions about admissibility of certain evidence offered by plaintiffs and excluded by the court. The bases of the objections thereto sustained may not exist in another trial and decision of the questions is not presently important.

6. Trial of the case was begun before a jury. Upon conclusion of introduction of plaintiffs' evidence, defendants moved for verdict instructed in their favor. Thereupon the parties agreed to dismissal of the jury and determination of the case by the judge. The jury was dismissed, and judgment was rendered for the defendants because, as stated therein, the "plaintiffs by the evidence introduced failed to prove a cause of action against any of the defendants." It appears to us to be clear that the judgment was rendered upon a view that plaintiffs had failed to make a "prima facie case" and not because the judge resolved credibility of witnesses against plaintiffs.

In our opinion a prima facie case against at least some of the carriers was made. For this reason the judgments of the district court and Court of Civil Appeals should be reversed, and the cause should be remanded, and we recommend that action.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and cause remanded to the district court, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.