## LOUISIANA SOUTHERN RY. CO. v. ANDERSON, CLAYTON & CO.

### No. 13143.

United States Court of Appeals
Fifth Circuit.

Oct. 3, 1951.

Rehearing Denied Nov. 7, 1951.

St. Clair Adams, Jr., New Orleans, La., for appellant.

Geo. S. Wright, Dallas, Texas, J. Raburn Monroe, Nicholas Callan, New Orleans, La., for appellee.

Before HOLMES, BORAH, and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

The appellee, who, by our opinion,[1] lost the fruits of the victory and judgment it had obtained in the trial Court, strenuously insisted by motion for rehearing that our determination that there was, in the trial Court, no serious effort to establish the liability of the defendant-carrier as a common carrier at common law evidenced a miscon-

1. Reported in 187 F.2d 908. Reference thereto will reveal the material facts in the case.

ception and was erroneous. In support of this contention, appellee procured from the trial Court an order directing the transmittal of specified supplemental record to this Court to clarify the "difference [which] has arisen as to whether the record truly discloses what occurred in the District Court." This "supplemental record" consists of a memorandum and the trial briefs of the parties, as well as excerpts from the oral argument of counsel at the conclusion of the trial, and a certificate from the official court reporter correcting an inaccuracy in his transcript. The complaint is not so much of error in our decision as in our refusal to adjudge "the independent liability of defendant as a common carrier." The Court granted the motion for rehearing in order to give appropriate consideration to the complaint that a material question had not been decided, directing that such rehearing be upon briefs only.[2] Upon consideration of the briefs of the parties, as well as the "supplemental record", to which no objection has been made, (save that the appellant insists that the judgment of a trial Court must find support in fact and law rather than in mere argument), we perceive a basis for a different view of plaintiff's contentions in the trial Court, and, accordingly, now consider the question whether the judgment in its favor is legally supported as predicated upon the independent liability of the switching carrier as a carrier in possession of an interstate shipment at the time of loss when measured by its common law liability.

■■■■ As held in our original opinion, the switching carrier could not be held liable for antecedent loss for the provisions of the Newton Amendment to the Carmack Amendment of the Interstate Commerce Act[3] evidences the Congressional intent "that a switching carrier should not be subjected to the liability for any antecedent loss

or damage of either the initial, connecting, or delivering carrier." [187 F.2d 910.] However, it is true, of course, that the common law liability of a carrier for a loss occurring on its own line is neither increased nor diminished by the statute,[4] although it is equally true that in instances within the terms of the statute the initial or delivering carrier may be held liable for losses which do not so occur. However, as ruled by our original opinion, a switching carrier is not a "delivering carrier" subject to the statutory liability. That it is engaged in interstate transportation in engaging to make delivery for the last line-haul carrier does not, and can not, consistently with the statutory scheme, make it responsible for any loss or damage which does not occur while the goods are in its possession. A shipper who chooses to assert his claim for liability against such a switching carrier must, in order to recover, prove facts sufficient to establish the independent liability of such carrier.

■■■■ What, then, without regard to the statute, is the independent liability of a switching carrier of an interstate shipment? We think the answer is plain and is made evident by the established principles, to which we have referred, that the provisions of the Interstate Commerce Act, above referred to, neither increases nor diminishes the liability of a common carrier for a loss occurring on its own line. At common law the common carrier is held to strict accountability, being absolutely liable for loss or damage for goods surrendered to its custody without regard to the exercise of due care, unless, of course, the damage flows from an excepted cause. "The duty of a common carrier is to transport and deliver safely. He is made, by law, an insurer against all failure to perform this duty, except such failure as may be caused by the public enemy, or by what

2. We remark that appellee's complaint of the Court's directing it to be the mover by brief upon the argument is without merit since it was then the losing party *in this Court*.

3. 49 U.S.C.A. § 20, subd. (11).

4. Adams Express Co. v. Croninger, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314; Cincinnati, New Orleans & Tex. Pac. Ry. Co. v. Rankin, 241 U.S. 319, 36 S.Ct. 555, 60 L.Ed. 1022; Cf. Reider v. Thompson, 339 U.S. 113, 119, 70 S.Ct. 499, 94 L.Ed. 698.

is denominated the act of God."[5] It was conceded in the trial Court that the provisions of the bills of lading under which the shipments moved were binding upon the switching carrier. The introduction in evidence of such bills of lading established a *prima facie* case of receipt by the switching carrier of the shipments in apparent good order.[6] It was undisputed that the plaintiff was the owner of the cotton, that the cars containing it were delivered to the switching carrier, and that there was failure of delivery and delivery in damaged condition. As one of its defenses, the carrier contended that the cotton must have been on fire at the time of delivery to it, but upon the trial, because of the absence of a witness by whom it was proposed to prove the "qualities of cotton", this defense was expressly abandoned. Therefore, as against the *prima facie* case made by the plaintiff there was no remaining defense asserted except the carrier's stipulated freedom from negligence. This was not, standing alone, sufficient to relieve the defendant-carrier from liability. We are asked to take judicial cognizance of the fact that cotton is not subject to spontaneous combustion and that the shipment must have contained "a fire-packed bale". But in view of the fact that the defendant has already asserted the defense as one to be established by evidence and then expressly abandoned it, we are unwilling to set aside the findings of the trial Court upon this ground. While, in some respects, the imposition of liability upon the defendant under the circumstances here present may seem to present "a hard case", such circumstances did not require the trial Court to find that the actual cause of the loss (the origin of the fire) occurred prior to the receipt of the shipment by the defendant. Especially is this so in view of the abandonment of this contention by the defendant.

The findings of fact and conclusions of law of the trial Court, when considered as made in adjudging the contention that the defendant was liable for a loss occurring upon its own lines, as we now deem proper to so view the judgment, find adequate support in law and in fact. Accordingly, in now ruling upon the question, which in our original opinion we declined to determine, that is, the independent liability of defendant as a common carrier, we withdraw our former judgment and here adjudge that the judgment of the trial Court should be, and the same is

Affirmed.

---

5. Bank of Kentucky v. Adams Express Co., 93 U.S. 174, 181, 23 L.Ed. 872; Hall & Long v. The Railroad Companies, 13 Wall. 367, 372, 80 U.S. 367, 372, 20 L.Ed. 594; Commodity Credit Corp. v. Norton, 3 Cir., 167 F.2d 161, 164, and citations; Acme Fast Freight v. Chicago, M., St. P. & P. R. Co., 2 Cir., 166 F.2d 778, and citations.

6. Cf. Chicago & N. W. Ry. Co. v. C. C. Whitnack Produce Co., 258 U.S. 369, 372, 42 S.Ct. 328, 66 L.Ed. 665.