**BRANIFF AIRWAYS INCORPORATED,**
**Appellant,**

**v.**

**EL PASO COIN COMPANY, INC., and**
**Continental Airlines, Inc., Appellees.**

**No. 6395.**

Court of Civil Appeals of Texas,
El Paso.

Dec. 31, 1974.

Rehearing Denied Jan. 29, 1975.

Grambling, Mounce, Deffebach, Sims, Hardie & Galatzan, Sam Sparks, El Paso, for appellant.

Kemp, Smith, White, Duncan & Hammond, William Duncan, El Paso, for appellees.

OPINION

STEPHEN F. PRESLAR, Chief Justice.

El Paso Coin Company recovered judgment against Continental Airlines and Braniff Airways for the value of one can

of gold coins lost in a shipment from El Paso, Texas, to New York, New York. The shipment originated with Continental and the coins were lost while in the possession of Braniff and the trial Court allowed Continental judgment of indemnity against Braniff. Continental has now paid the judgment to El Paso Coin and Braniff brings this appeal. We affirm.

El Paso Coin Company delivered to Continental Airlines at the El Paso International Airport three five-gallon paint cans each containing 250 gold coins. A rapid airbill was prepared as to each can with some of the information being supplied by El Paso Coin and the other blanks being filled in by Continental. Proper tariff charges were paid. The can that was ultimately not delivered was given rapid airbill number 005–1307 5532. This airbill listed the value of the can of coins as $26,625.00, and listed the destination as La Guardia Airport in New York. The three cans were transported by Continental to Dallas, Texas, where physical possession was taken by a Braniff employee who receipted for them through his endorsement of the cargo manifest. Braniff changed the routing to Kennedy Airport in New York and two of the cans arrived there, and it is still not known what happened to the third can, which is the subject of this lawsuit. There is no question but that the loss occurred while the can of coins was in the possession of Braniff, but how or when the loss occurred is unknown. Appellant Braniff says that the trial Court erred in rendering judgment against Braniff as El Paso Coin and/or Continental failed to comply with the applicable tariffs regarding the shipment in question. As to this, our conclusion is that under the circumstances in which the loss occurred while the shipment was in the possession of Braniff its liability for the loss is established, and this assertion of tariff violations amounts to an excuse for such liability which Braniff must prove. We arrive at this conclusion recognizing that Federal law controls, but that in this particular

area as to air carriers there is no Federal regulation setting out the rights and liabilities between shipper and carrier and connecting carriers nor is it spelled out in the tariffs. The liabilities and rights of carriers in general are set forth in the Interstate Commerce Act, particularly the section known as the Carmack Amendment, 49 U.S.C.A. § 20(11) and (12). Under the Carmack Amendment a shipper establishes his prima facie case when he shows delivery in good condition, loss or damaged condition on arrival, and the amount of damages. The burden of proof is then upon the carrier to excuse the loss and show that it was free from negligence. Missouri Pacific Railroad Co. v. Elmore & Stahl, 377 U.S. 134, 84 S.Ct. 1142, 12 L.Ed. 194 (1964). The Federal Aviation Act has no such provisions as the Carmack Amendment and, as noted by the Texas Supreme Court, Congress has not seen fit to make the Carmack Amendment applicable to airline carriers. American Airlines, Inc. v. Miller, 163 Tex. 400, 356 S.W.2d 771 (1962). In the case of Modern Wholesale Florist v. Braniff International Airways, Inc., 162 Tex. 594, 350 S.W.2d 539 (1961), the Texas Supreme Court, speaking through the late Justice Norvell, said:

> "We recognize the established doctrine that the rights and liabilities in respect to damage to goods moving in interstate commerce are controlled by Acts of Congress, agreements between the parties and common law principles accepted and enforced in the federal courts, but we have been cited to no federal case which holds that the common law presumption relating to terminal carriers has been abrogated by the adoption of the Federal Aviation Program, 49 U.S.C.A. § 1373. Such presumption is not a local Texas device but one that has general application throughout most common law jurisdictions. In the federal domain, it has been recognized and approved by the Supreme Court of the United States. In Chicago & Northwestern Ry. Co. v. C. C. Whitnack Produce Co., 258 U.S. 369,

42 S.Ct. 328, 66 L.Ed. 665, (cited in the original opinion), it was held that the terminal carrier presumption was not abrogated by the adoption of the Carmack amendment. We may paraphrase the language of that opinion and say that we find nothing in 49 U.S.C.A. § 1373 which indicates a legislative purpose to abrogate the accepted common law doctrine concerning the terminal carrier presumption."

It was held in that case that the plaintiff in presenting its claim was entitled to rely on a presumption that damage to the goods in transit was caused by the terminal carrier even though the plaintiff did not know where and how the damage occurred and even though the tariff provided that the terminal carrier would not be liable for loss not caused by actual negligence of itself. Since the time of that case, Texas has adopted the Uniform Commercial Code, Tex.Bus. & Comm.Code Ann., V.T.C.A., and we think it is controlling of the matters presented in this case. The adoption of the Code repealed the bill of lading laws of Texas. See Uniform Commercial Code, 7 S.Tex.L.J. 161; Transition to Uniform Commercial Code, 29 Tex.B.J. 345; Construction and Effect of UCC Art. 7, 21 A.L.R.3d 1339.

■ By Section 1.201(6), the term "Bill of Lading" is made to include an airbill. Section 7.302 is very similar to the Carmack Amendment in that it provides that the issuer of a bill of lading is liable to anyone entitled to recover on the bill of lading for any breach of its obligations by a connecting carrier. It also provides that while the goods are in his possession the duties of the connecting carrier are the same as those of the issuer, and that the issuer of such bill of lading is entitled to recover from the connecting carrier in possession of the goods when the breach of the obligation occurred. And the amount of recovery is such as may be evidenced by any receipt, judgment, or transcript thereof. See 9 Tex.Jur.2d, Bills of Lading, p. 428. As applied to the case before us, this would make Continental liable to El Paso Coin for the loss which occurred while the coins were in the possession of Braniff and it would entitle Continental to then recover the amount paid the El Paso Coin Company from Braniff. That is what the judgment in this case does. In addition to the liability imposed by Section 7.302, Section 7.403 imposes the obligation to deliver the goods to the rightful person unless certain enumerated excuses are proved by the carrier. None of those excuses are pertinent here, and Braniff is liable under this section of the Code unless its tariff-violations excuse can be upheld. Under the provisions of the Code cited, Braniff stands liable as a prima facie case was made. It has not refuted the facts establishing that liability. Instead, it stands on the proposition, which it pled, that the sole proximate cause of the loss was the failure of El Paso Coin and/or Continental Airlines to comply with the applicable tariffs with regard to this shipment. The applicable tariffs specified that advance arrangements shall be made on shipments of extraordinary value. The shipment in question was a shipment of extraordinary value and the advance arrangements were not made. The burden of proof was on Braniff to establish this pleading of sole proximate cause, and the trial Court, sitting without a jury, obviously found against it, and we are of the opinion that the evidence sustains this implied finding of the trial Court. In the case of Travelers Insurance Company v. Delta Air Lines, Inc., 498 S.W.2d 443 (Tex.Civ.App.—Texarkana 1973, no writ), almost the same contention was made in that it was contended that had the agents of the airline known that the shipment contained jewelry it would have inaugurated special handling procedures designed for high risk shipments and as a result the shipment would not have been lost. In rejecting this excuse of the carrier, the Court pointed out what is also true here. That is, that it is not known how the loss occurred, therefore, it cannot be said that the special handling procedure would have prevented that particular loss.

Since no one knows what happened to the shipment or when or what caused or contributed to the happening, there is an absence of evidence that the acts of El Paso Coin and Continental had any causal connection with the loss. More specifically, Braniff's pleading of sole proximate cause is not sustained by this speculative evidence.

Appellant Braniff urges that the trial Court erred in finding that there was a waiver of the tariff provisions, and also that by the very terms of the tariff, they could not be waived. These questions are academic, since we have determined that the failure to comply with the tariff did not relieve Braniff of liability under the manner in which the case was tried. If the waiver would not affect the outcome, it matters not whether there could be or was such a waiver.

Appellant's final point of error is that the Court erred in finding Braniff negligent. This, too, was covered by our prior discussion.

The judgment of the trial Court is affirmed.